**Diana BAUER, Individually and as Personal Representative of the Estate of Leonard Piercy; Delores Cochran; Wilma Crist; and Brian David Laduct, Personal Representative of Jan Hettinger, Deceased, Appellants,**

v.

**Emmie PIERCY, Appellee.**

**93–CA–2655–MR.**

Court of Appeals of Kentucky.

Dec. 22, 1995.

William Thomas Klapheke II (briefed), Glasgow, for Appellants.

Joe Lane Travis (briefed), Thomas L. Travis (briefed), Glasgow, for Appellee.

Before HOWERTON, JOHNSTONE and WILHOIT, JJ.

HOWERTON, Judge.

The question posed in this appeal is whether a surviving spouse may renounce her late husband's will and take her statutory share when the two spouses had executed mutual wills and a contract "not to revoke or change their respective wills." There was no allegation that KRS 394.540, the statute concerning contracts to make a will, was not complied with. The trial court granted summary judgment in favor of the surviving spouse on the narrow issue of law that renunciation of a spouse's will does not breach a contract not to revoke or change one's own will. Having reviewed the issues as presented, the record and the law, we affirm.

Leonard Piercy and Emmie Short Piercy married on December 29, 1986—the second marriage for both. Each had children by prior marriages but none from this union. On January 24, 1992, Leonard and Emmie executed separate wills giving the survivor of them a life estate in the marital residence.

Should the surviving spouse remarry or permanently leave the residence, the property was to be sold and the proceeds divided one-half to Leonard's children and one-half to Emmie's children. The couple also executed a contract which provided in part:

> [I]n consideration of each party having executed a will in favor of the other and making provision for the children by prior marriages of both parties, each party having full disclosure of the value of the estate of one another, ... the parties hereto do agree and contract with one another not to revoke or change their respective wills of even date herewith, either before or after the death of either party without the express written consent of both parties....

Leonard died September 4, 1992, his will was offered for probate four days later, and Emmie renounced the will on September 19, 1992, claiming her share as if Leonard had died intestate. KRS 392.020, as modified by KRS 392.080. Leonard's daughters, Diana Bauer, individually and as the personal representative of the estate of Leonard Piercy; Delores Cochran; Wilma Crist; and Jan Hettinger [hereinafter "Bauer"], brought a declaratory judgment action to enforce the will and the terms of the will contract. As noted, the trial court granted summary judgment on October 13, 1993, decreeing that Emmie had not breached the contract because it contained no provision denying her the right to renounce the will.

Bauer then brought this appeal on behalf of Leonard's estate and his children, asserting the trial court erred in granting summary judgment and that Emmie should be estopped from renouncing the will because it was the parties' intentions that the dispositive scheme not be changed, as evidenced by two earlier deed changes. Emmie has, in effect, partially accomplished what the will and contract precluded.

KRS 392.020 sets out the surviving spouse's intestate share, supplanting the common law concept of dower and curtesy: 1) an estate in fee of one-half of the surplus realty (after payment of debts of the estate and costs of administration) owned in fee simple by the decedent at death; 2) a life estate in one-third of any realty owned in fee simple by the decedent during the marriage but not at the time of death unless the survivor's right has been forfeited or barred; and 3) one-half of the surplus personalty left by the decedent.

KRS 392.080 provides that the surviving spouse may

> release what is given to him or her by will ... and receive his or her share under KRS 392.020 as if no will had been made, except that ... the share in any real estate of which the decedent or anyone for the use of the decedent was seized of an estate in fee simple at the time of death shall be only one third (⅓) of such real estate.

Thus KRS 392.080 restricts 1) above to one-third rather than one-half.

■ Black's defines "revocation of will" as "[t]he recalling, annulling or rendering inoperative an existing will, *by some subsequent act of the testator*...." Black's Law Dictionary 1187 (5th ed.1979) (emphasis added). "Renunciation" is defined as "[i]n connection with wills, the act of waiving a will and claiming a statutory share as in the case of a spouse whose share under a will is less than her statutory share." *Id.* at 1167. Thus, revocation and renunciation not only have different meanings, but the performance of each is accomplished by different actors—revocation by the testator and renunciation by the surviving spouse.

The study and practice of law, perhaps more than any other profession or art, depends on precision and clarity in language. The terms revocation and renunciation, while perhaps holding the same meanings for the layperson, have unique and specific meanings for attorneys. Language is the medium through which the parties' intentions are expressed and the "meeting of the minds" accomplished. Thus specificity and clarity of the words employed are of utmost importance.

■ Because the will contract addressed revoking and changing the parties' respective wills, not merely the testamentary scheme, and was silent as to renouncing the decedent's will, we agree that on this narrow issue of law, Emmie was entitled to summary judgment. CR 56.03. In coming to this

conclusion, we are cognizant of the caution trial courts must exercise in granting summary judgments. *Cf. Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991).

The judgment of the Monroe Circuit Court is affirmed.

JOHNSTONE, J., concurs.

WILHOIT, J., concurs and files a separate opinion.

WILHOIT, Judge, concurring.

I concur with the majority, particularly in view of the undisputed evidence that before they signed the contract, both Mr. and Mrs. Piercy were made aware that its terms did not preclude renunciation of the other's will by one of them.